UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------x
AVRIL C. MORRISON, DELISA
WILLIAMS, JANENNE GONZALEZ,
DELROY DANVERS, GARFIELD
DANVERS, individually and on behalf of
all others similarly situated,

      Plaintiffs,

-against-

INTERNATIONAL UNION OF
OPERATING ENGINEERS LOCAL
14-14B, AFL-CIO, BAY CRANE
SERVICE INC., DCM ERECTORS,
INC., DRAGADOS CONSTRUCTION
USA, INC., DRAGADOS USA,
INC., EL SOL CONTRACTING AND
CONSTRUCTION CORPORATION,
FOREST CITY COMMERCIAL
CONSTRUCTION CO., INC., FOREST
CITY RATNER COMPANIES, LLC,
GOTHAM CONSTRUCTION
COMPANY, LLC, HALMAR
CONSTRUCTION CORP., JUDLAU
CONTRACTING, INC., JUDLAU
ENTERPRISES, LLC, LEND LEASE
(US) CONSTRUCTION LMB INC.,
MONADNOCK CONSTRUCTION,
INC., SHIAVONE CONSTRUCTION
CO. LLC,
SKANSKA USA INC., SKANSKA INC.,
SOLERA CONSTRUCTION
INC., SORBARA CONSTRUCTION
CORP., TISHMAN CONSTRUCTION
CORPORATION OF MANHATTAN,

**MEMORANDUM AND ORDER**
Case No. 12-CV-301(FB)(JO)

TISHMAN CONSTRUCTION
CORPORATION OF NEW YORK,
TISHMAN CONSTRUCTION
CORPORATION, TURNER
CONSTRUCTION COMPANY,
YONKERS CONTRACTING
COMPANY, INC.,

      Defendants.

-------------------------------------------------x

*Appearances*:

| | |
|---|---|
| *For Plaintiffs*: | *For Defendant International Union* |
| MICHAEL G. O'NEILL, ESQ. | *of Operating Engineers Local* |
| 30 Vesey Street, Suite 301 | *14-14B, AFL-CIO:* |
| New York, New York 10007 | VINCENT M. GIBLIN, ESQ. |
| | Pitta & Giblin LLP |
| | 120 Broadway, 28th Floor |
| | New York, New York 10271 |

**BLOCK, Senior District Judge:**

Plaintiffs are two black women, two black men and one Hispanic woman.

Seeking to represent a class of similarly situated individuals, they allege that Local

14-14B of the International Union of Operating Engineers ("Local 14")

discriminates against non-whites in the operation of its hiring hall.

Local 14 moves for judgment on the pleadings pursuant to Federal Rule of

Civil Procedure 12(c). For the following reasons, Local 14's motion is denied.[1]

---

[1]Plaintiffs originally asserted claims for sex discrimination against Local 14, as well as claims of race discrimination against numerous contractors that use Local 14's hiring hall. By letter dated June 30, 2014, they move to voluntarily dismiss those claims without prejudice. That motion is granted.

# I

The following facts are drawn from the amended complaint and are taken as true:

Local 14 represents operators of various types of heavy equipment (known as "operating engineers") on construction projects in New York City. It has about 1,200 members; only about 100 (8.33%) are non-white. Although the complaint does not allege that any of the five named plaintiffs are members of Local 14, plaintiffs' counsel has represented that they are, *see* Pls.' Mem. of Law in Opp'n to Local 14's Mot. for J. on the Pleadings 9. The complaint is deemed amended accordingly.

The complaint alleges that Local 14 intentionally limits non-white membership by informing unsolicited call-ins that the "books are closed" (i.e., that the Union is not accepting new members), while accepting new members referred or sponsored by existing (white) members. Am. Compl. ¶ 70. In addition, it requires a "long and tedious" apprenticeship process, but often waives the process for white applicants who are referred or sponsored by existing (white) members. *Id.* ¶ 71.

The complaint further alleges that Local 14 discriminates against non-white members in the manner in which it fills requests for union jobs. In that regard, they allege that Local 14 has entered into collective bargaining agreements

("CBAs") with various construction industry trade groups throughout the city. The CBAs require contractors who are members of the trade groups to hire members of Local 14 as operating engineers on their projects. The CBAs also give Local 14 "unfettered discretion" to appoint master mechanics. *Id.* ¶ 76. A master mechanic is an operating engineer assigned to monitor CBA compliance at the work site and to act as an on-site liaison between the contractor and Local 14. Although the appointment is subject to the contractor's approval, Local 14's decision is never challenged in practice. Local 14 "almost never appoints non-Whites as Master Mechanics." *Id.* ¶ 77.

In theory, the contractors may hire operating engineers directly (as long as the hirees are members of Local 14). A contractor who does so, however, can be "punished" by having the master mechanic on the job "insist on a strict interpretation of the rules and the CBA," which can "greatly increase the cost of construction." *Id.* ¶ 80. Thus, the appointment of master mechanics concentrates hiring decisions into Local 14's hiring hall.

According to the complaint, Local 14 "rigs" the hiring hall so as to give preference to white male operating engineers. First, it can "simply . . . instruct the contractor to request the Operating Engineer by name." *Id.* ¶ 95. Second, it can "hold the job request until the chosen Operating Engineer is the next engineer to be assigned at the hiring hall." *Id.* ¶ 96. Third, it can "sign in the Operating Engineer

4

at the hiring hall to make it appear that he arrived at a particular time." *Id.* ¶ 97. In addition, it can sidestep union membership altogether and assign nonmembers under the guise of providing "the necessary experience to join Local 14." *Id.* ¶ 101.

## II

Plaintiffs allege that Local 14's actions constitute a pattern and practice of intentional discrimination on the basis of race. Such discrimination violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981 and the New York City Human Rights Law ("NYCHRL").

Local 14 does not dispute that plaintiffs have stated a claim for violations of Title VII and § 1981. It argues, however, that their claims under the NYCHRL are preempted by § 301 of the Labor Management Relations Act. It further argues that plaintiffs misunderstand the nature of union membership. The Court addresses those arguments in turn.

### A. Preemption

Local 14's preemption argument is of limited significance because it leaves untouched identical claims under Title VII and § 1981. In any event, it grossly overstates the scope of § 301 preemption.

Section 301 preemption is limited to applications of state law that require "the *interpretation* of a collective-bargaining agreement." *Lingle v. Norge Div. of*

*Magic Chef, Inc.*, 486 U.S. 399, 413 (1988) (emphasis added). Such preemption is

necessary to maintain uniformity in the interpretation of rights created by

collective bargaining agreements. *See id.* at 404 ("We . . . held [in *Teamsters v.*

*Lucas Flour Co.*, 369 U.S. 95 (1962),] that § 301 mandated resort to federal rules

of law in order to ensure uniform interpretation of collective- bargaining

agreements, and thus to promote the peaceable, consistent resolution of

labor-management disputes.").

"[N]ot every dispute concerning employment, or tangentially involving a

provision of a collective-bargaining agreement, is pre-empted by § 301 or other

provisions of the federal labor law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202,

211 (1985). In particular, "§ 301 cannot be read broadly to pre-empt nonnegotiable

rights conferred on individual employees as a matter of state law." *Livadas v.*

*Bradshaw*, 512 U.S. 107, 123 (1994). If the "legal character" of the claim involves

rights independent of those created by a collective-bargaining agreement, the claim

is not preempted. *Id.*

Plaintiffs seek to vindicate rights conferred by the NYCHRL (as well as

Title VII and § 1981). Since those rights are independent of the CBAs, they are

not preempted. To put it another way, however the CBAs are interpreted, they

cannot authorize Local 14 to violate the NYCHRL. *Cf. Lingle*, 486 U.S. at 412

("[E]ven if an arbitrator should conclude that the contract does not prohibit a

6

particular discriminatory or retaliatory discharge, that conclusion might or might not be consistent with a proper interpretation of state law.").

## B. Union Membership versus Employment

Local 14 argues that "employment [on union jobs] is the route to membership rather than the other way around," and that denial of membership rights does not support a claim "for the employment-related damages [plaintiffs] seek." Mem. of Law in Supp. of Local 14's Mot. for J. on the Pleadings 9-10. This argument is explicitly confined to claims "based upon supposed denial of membership rights." *Id.* at 9.

At oral argument, plaintiffs' counsel clarified that his clients—who are union members—are not pursuing claims based on the alleged exclusion of non-whites from union membership. As a result, Local 14's argument is moot.

## III

As noted, Local 14 does not dispute that plaintiffs have stated claims for intentional race discrimination under Title VII and § 1981; as a result, those claims will proceed. Since the Court has rejected, for the reasons set forth above, Local 14's preemption argument, plaintiffs' claims under the NYCHRL also survive.

Local 14's motion for judgment on the pleadings is denied.

**SO ORDERED.**

                       /S/ Frederic Block
                       FREDERIC BLOCK
                       Senior United States District Judge

Brooklyn, New York
July 21, 2014